DECISION
William J. Small, Jr., defendant-appellant, appeals the September 15, 2000 judgment of the Franklin County Court of Common Pleas finding him guilty of: (1) two counts of burglary, violations of R.C. 2911.12, second-degree felonies; (2) aggravated burglary, in violation of R.C.2911.11, a first-degree felony; and (3) kidnapping, in violation of R.C.2950.01, a first-degree felony.
From April 1999 to March 2000, appellant lived with his girlfriend, Maxcine Martin, and her four children, including her two sons Sam and Ira. When Martin and appellant's relationship deteriorated, Martin told appellant to move out. Appellant moved out and took most or all of his personal belongings with him. Martin told appellant several times not to return to the house. On the evening of April 10, 2000, as Martin was returning from a trip, appellant pushed his way through a doorway into Martin's house and took a Dreamcast video game system that had been purchased by appellant, Ira, and Sam, using Martin's money. Appellant stated that he was taking the Dreamcast "because I can." Appellant then left the house. A short time thereafter, appellant began calling Martin on the telephone several times per day, telling her that he would kill her, "mess" her up, blow up her car and neighborhood, and kill Ira. Martin did not call the police at this time.
On April 29, 2000, Martin was returning home in the early morning when appellant jumped out of the bushes just before she got to her back door. Appellant struck Martin in the head, causing her to fall. He continued to hit her in the head and choke her. Sharon Berry, a neighbor, testified she saw appellant jump out from the bushes and strike Martin until appellant dragged Martin around the side of the house and out of her view. After striking and kicking Martin, appellant left without entering the residence. Appellant continued to make threats on the phone to Martin.
On May 8, 2000, Andre Small, appellant's brother, knocked on Martin's door. After seeing Andre through the peephole, Martin opened her door. However, after she opened the door, appellant appeared beside the doorway and pushed his way into the house. He locked the door, pulled the blinds, and told Martin to sit on the couch and not move. After a conversation regarding the title to her vehicle, appellant told Martin to call his former girlfriend, Jean Campbell. After Martin called Campbell, appellant left Martin's house. Appellant later telephoned Martin and told her that he was going to kill her.
On May 12, 2000, while driving a friend to cash a check, Martin saw Andre and picked him up. She took Andre back to her home and went upstairs to use the bathroom. While Martin was in the bathroom, appellant entered the house, went upstairs, and began hitting and kicking her. He then pushed her down the stairs and continued to hit and kick her. After Martin made it onto the couch, appellant picked up an electric "thunderball" and repeatedly hit her on the leg with it. Before leaving, appellant asked Martin if the person she took to cash the check was her "man." That evening, appellant telephoned Martin with more threats. Approximately a week later, Martin called the police when appellant continued to call her and threaten to kill Ira.
On June 15, 2000, a Franklin County grand jury returned a multiple count indictment against appellant on two counts of burglary, two counts of kidnapping, and one count of aggravated burglary. On September 6, 2000, a jury trial commenced. Berry, Martin, Ira, Sam, and Brian Beavers, a Columbus Police Officer, testified on behalf of the state at the hearing. No witnesses testified on appellant's behalf. Because Ira had been injured in an accident and had his mouth wired shut, he testified via written responses. On September 12, 2000, the jury returned a guilty verdict on one count of aggravated burglary, one count of kidnapping, two counts of burglary, and a verdict of not guilty on one count of kidnapping. The trial court held a sentencing hearing at which it sentenced appellant to the following:
 Seven (7) years incarceration for Counts One and Two and Eight (8) years for Counts Four and Five at the OHIO DEPARTMENT OF REHABILITATION AND CORRECTION. This shall run consecutive with Counts One, Two, Four, and Five.
Appellant appeals the judgment of the trial court, asserting the following assignments of error:
 I. THE TRIAL COURT ERRED WHEN IT ALLOWED THE PROSECUTING ATTORNEY TO ELICIT TESTIMONY FROM WITNESSES REGARDING UNRELATED AND UNINDICTED WRONGFUL CONDUCT.
 II. MR. SMALL WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL IN VIOLATION OF HIS RIGHTS AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I § 10 OF THE OHIO CONSTITUTION.
 III. THE TRIAL COURT ERRED WHEN IT SENTENCED MR. SMALL TO A VAGUE AND AMBIGUOUS SENTENCE AND SUCH SENTENCE CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AMENDMENT TO UNITED STATES CONSTITUTION AND SECTION 9, ARTICLE I, OHIO CONSTITUTION.
 IV. THE TRIAL COURT ERRED WHEN IT CONSIDERED FACTORS OUTSIDE THE RECORD AND IMPOSED THE SEVERE CONSECUTIVE SENTENCES AND THUS DENIED MR. SMALL DUE PROCESS OF LAW.
Appellant asserts in his first assignment of error that the trial court erred when it allowed Berry and Martin to testify as to the alleged events of April 29, 2000, when appellant jumped out from behind the bushes and had a physical confrontation with Martin. Appellant was not indicted for the events of April 29, 2000. Appellant's trial counsel objected to Martin's testimony on this issue and, thus, we review the admission of her testimony under the abuse of discretion standard. State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. An abuse of discretion is more than an error of law or judgment, but rather demonstrates a perversity of will, passion, prejudice, partiality, or moral delinquency. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621. With regard to Berry's testimony, appellant's trial counsel did not object, thereby waiving any challenge to admissibility. See State v. Williams (1977), 51 Ohio St.2d 112. Our review is thus reduced to a plain error analysis under Crim.R. 52(B). See State v. Wickline (1990),50 Ohio St.3d 114; State v. Broom (1988), 40 Ohio St.3d 277. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. Also, in order for this court to apply Crim.R. 52(B), it must be clear that the outcome of the trial would have been different but for the alleged error. See State v. Lane (1995),108 Ohio App.3d 477, 482.
Evid.R. 404(B) excludes evidence of "other crimes, wrongs, or acts." The rule provides, however, for an exception when the prosecution seeks to introduce evidence of other bad acts not to show the accused's character or criminal propensity, but to establish circumstantially either an element of the crime or a material fact at issue. Specifically, Evid.R. 404(B) allows the introduction of evidence of "other crimes, wrongs, or acts" when that evidence is used as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident." This principle is further embodied in R.C. 2945.59, which provides:
 In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
The Ohio Supreme Court has held that both R.C. 2945.59 and Evid.R. 404(B) are to be strictly construed against the state and conservatively applied by trial courts. State v. DeMarco (1987), 31 Ohio St.3d 191, 194. Further, "other acts" evidence is relevant and, thus, admissible, where those acts form part of the immediate background of the crime charged, and hence are "inextricably related" to the act alleged in the indictment. State v. Curry (1975), 43 Ohio St.2d 66, 73. Thus, where the challenged evidence plays an integral role in explaining the sequence of events and is necessary to give a complete picture of the alleged crime, the jury is entitled to know the "setting" of a case. State v. Thompson (1981), 66 Ohio St.2d 496, 498.
In the present case, both Martin and Berry testified that on April 29, 2000, appellant jumped out from behind the bushes as Martin approached her home, struck her in the head, choked, and kicked her. We find that the trial court did not abuse its discretion in allowing Martin to testify as to this incident. The most compelling reason to admit the evidence was to explain the background of the case and why Martin was reluctant to call police after each incident and why she waited until a week after the last incident occurred to call the authorities. In opening statements, appellant's trial counsel specifically called the jury's attention to the fact Martin failed to call the police after the incidents. Appellant's trial counsel also cross-examined Martin extensively on why she did not call the police when the problems began in April, after each incident, and after the harassing and threatening phone calls, thereby raising the issue of her credibility as to whether the events actually occurred. Martin responded several times that she was "just too afraid" to call the police because appellant lived in her same complex and would be able to see the police at her house. She feared that if she called them and the police failed to arrest appellant, she would be "in deeper water than I was before." Appellant's trial counsel also made it clear in one of his sidebar conferences on an objection that "a key part of our defense" is the issue of why nobody called the police during these incidents. It has been held that prior incidents are admissible to show state of mind and why the victim did not summon police sooner. State v. Kelly (1993), 89 Ohio App.3d 320; see, also, State v. Kneisley (Jan. 15, 1999), Montgomery App. No. 17027, unreported. Thus, the incidents on April 29, 2000 were admissible to develop the general setting and establish Martin's state of mind as to why she did not call the police after each incident. The trial court did not abuse its discretion in admitting the testimony of Martin, and there was no plain error in admitting the testimony of Berry.
Further, even if the trial court improperly admitted the testimony of the April 29, 2000 incident, we find appellant failed to demonstrate he was materially prejudiced by the evidence. See State v. Lowe (1994),69 Ohio St.3d 527, 532. As the Supreme Court of Ohio has found, "[i]f the other admissible evidence, standing alone, constitutes overwhelming proof of guilt, the error is harmless." State v. Hutton (1990), 53 Ohio St.3d 36,41. In the present case, there is sufficient evidence through the testimony of Martin, Ira, and Sam, absent the reference to the prior physical confrontation by Martin and Berry, upon which the jury could have found appellant guilty beyond a reasonable doubt. Any error in the admission of other acts evidence in this case is harmless. Therefore, the testimony concerning the prior confrontation did not render the trial unfair, and appellant's first assignment of error is overruled.
Appellant argues in his second assignment of error that he was denied effective assistance of counsel during the trial. To prevail on a claim of ineffective assistance of counsel, a defendant must show both deficient performance and resulting prejudice. Strickland v. Washington (1984), 466 U.S. 668, 687. To demonstrate deficiency, a defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. at 688. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. Id. The adequacy of counsel's performance is reviewed in light of all the circumstances surrounding the trial. Id. "Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time." State v. Cook (1992), 65 Ohio St.3d 516, 524-525. Assuming that counsel's performance was ineffective, a defendant must still show that the error had an effect on the judgment. State v. Bradley (1989), 42 Ohio St.3d 136, 142. Reversal is warranted only where a defendant demonstrates there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. Id.
Appellant first asserts his trial counsel was ineffective for failing to object to the admission of the "other acts" testimony presented by Martin and Berry. However, appellant's trial counsel did object to Martin's testimony. As to Berry, we have already found the trial court did not err in allowing the testimony of Berry regarding the incidents of April 29, 2000. Therefore, this argument is without merit.
Appellant next asserts his trial counsel was ineffective in allowing Ira to testify by written response and in failing to object to the leading questions asked by the state. Evid.R. 611 empowers trial courts with discretion in controlling the manner in which witnesses are interrogated so as to make the interrogation and presentation effective for the ascertainment of the truth and avoid needless consumption of time. Further, Evid.R. 611 provides that leading questions can be used on direct examination if necessary to develop testimony. This exception, allowing for leading questions to develop testimony, "is quite broad and places the limits upon the use of leading questions on direct examination within the sound discretion of the trial court." State v. Lewis (1982),4 Ohio App.3d 275, 278.
After reviewing the testimony of Ira and the lengthy discussions the trial court had with both parties on two separate occasions regarding the state's use of leading questions and the need for written responses from this particular witness, we find appellant's argument without merit. Although the present circumstances were unusual, we find the trial court did not abuse its discretion and, thus, appellant's trial counsel cannot be deemed to have been ineffective in failing to object to such actions. Significantly, before the trial commenced, the court gave appellant's trial counsel the opportunity to discuss a possible continuance with appellant until Ira could testify under normal circumstances. After discussing the matter with appellant, appellant's counsel stated, "my client does want to move forward with a trial today. He's not asking for a continuance." Before Ira testified, appellant's trial counsel reiterated that appellant did not want a continuance. Thus, it is apparent that appellant was in full agreement with proceeding in the manner the state, his own counsel, and the court discussed. Regardless, appellant must also demonstrate that the result of the trial would have been different. As the state points out, Ira's testimony only corroborated his mother's and brother's testimony with regard to the first burglary and the threatening phone calls from appellant and, thus, there was sufficient evidence on the issues Ira testified to even without his testimony. Therefore, we cannot find appellant was prejudiced by his trial counsel's failure to object to the manner in which Ira's testimony was elicited or the state's leading questions.
Appellant also contends his trial counsel was ineffective in failing to call Jean Campbell as a witness, whom he had stated in opening statements he would call to testify. Appellant's trial counsel had stated Campbell would testify that Martin was setting up appellant. It has been previously held that "[d]ecisions regarding the calling of witnesses are within the purview of defense counsel's trial tactics." State v. Miller (1988), 43 Ohio App.3d 44, 45. Accordingly, courts have traditionally been reluctant to find ineffective assistance of counsel in those cases where an attorney fails to call a particular witness. See State v. Otte (1996), 74 Ohio St.3d 555, 565-566; State v. Williams (1996),74 Ohio St.3d 456.
We do not know precisely why Campbell was not called as a witness. There is a possible hint of trial counsel's reasoning in a long oration given by appellant at the sentencing hearing, in which appellant claims he wanted Campbell to testify but his attorney stated, "[n]o, I think it's best for you not to do that." Appellant stated, in apparent reference to his attorney and Campbell:
 That's why he went out in the hallway when my witnesses was out there all like this, scared and everything, worried, and they know they gonna show her a record, that she got a record. She don't got no record, and why would she want to lie? * * *
Thus, if appellant's statement is to be believed, it appears that appellant's trial counsel's failure to call Campbell was purely a matter of trial tactics. Appellant's trial counsel could have changed his mind and believed Campbell may not have been a convincing witness or her credibility may have been questionable, thereby actually harming appellant's defense. See State v. Dawson (July 30, 1997), Summit App. No. 18216, unreported (defense counsel's failure to call a witness because of questionable credibility and potential bias is a matter of trial strategy). This court recently stated that a decision by defense counsel not to call a witness may result from changed circumstances during trial and does not constitute ineffective assistance of counsel. See State v. Waddell (Aug. 15, 2000), Franklin App. No. 99AP-1130, unreported. Therefore, we cannot say the performance of appellant's trial counsel was ineffective or that there was a reasonable probability appellant would have been acquitted had Campbell testified.
Appellant further asserts his trial counsel was ineffective in failing to move for an acquittal pursuant to Crim.R. 29 either after the state rested or after the defense rested. The failure of trial counsel to move for a judgment of acquittal under Crim.R. 29 does not constitute ineffective assistance of counsel when the state's case-in-chief links the defendant to the crimes of which he is accused. State v. Mills (1991), 73 Ohio App.3d 27, 35. Thus, a motion for acquittal may be granted by the trial court only where, construing the evidence most strongly in favor of the state, the evidence is insufficient to sustain a conviction. See Crim.R. 29; State v. Ellis (July 25, 1996), Franklin App. No. 96APA02-188, unreported. In the present case, sufficient evidence exists to support appellant's convictions. The state presented sufficient evidence through the testimony of Martin, Ira, and Sam such that, construing such testimony in favor of the state, a rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. Thus, even assuming, arguendo, trial counsel's decision not to make a Crim.R. 29 motion constituted deficient performance, because appellant cannot demonstrate counsel's deficient performance prejudiced his defense, appellant's claim of ineffective assistance of counsel still fails. For the foregoing reasons, appellant's second assignment of error is overruled.
Appellant argues in his third assignment of error the trial court's sentence was vague and ambiguous. At the sentencing hearing, the trial court announced the following sentence:
 Based upon the circumstances of these offenses, the Court is going to order a sentence of seven years on Counts One and Two and sentences of eight years on Counts Four and Five.
* * *
 [A]nd I am going to order that those sentences be served consecutively.
Pursuant to the written entry, the trial court sentenced appellant to:
 Seven (7) years incarceration for Counts One and Two and Eight (8) years for Counts Four and Five at the OHIO DEPARTMENT OF REHABILITATION AND CORRECTION. This shall run consecutive with Counts One, Two, Four, and Five.
Appellant is uncertain whether the trial court intended to sentence him to one seven-year sentence for counts one and two and one eight-year sentence for counts four and five for an aggregate of fifteen years; one seven-year sentence for counts one and two and two eight-year sentences for counts four and five for an aggregate of twenty-three years; or two seven-year sentences and two eight-year sentences for an aggregate of thirty years. The state agrees the trial court's sentence is unclear and, therefore, we should remand the matter to the trial court to clarify its sentence. We agree. Thus, the matter is remanded for clarification of appellant's sentence.
Appellant also assets in this assignment of error that regardless of which aggregate sentence the trial court intended, the sentence constituted cruel and unusual punishment because it is disproportionate to the crimes he committed. Appellant contends that:
 * * * Other than the bruises and lacerations allegedly sustained, no other physical contact occurred between Mr. Small and Ms. Martin. Based on the testimony, the assault and/or domestic violence conduct would be a misdemeanor offense. The value [of the] items taken would at most constitute a misdemeanor theft.
We find the sentences do not constitute cruel and unusual punishment. Appellant acknowledges the sentences were within the statutory range of punishment. A sentence within the statutory range generally cannot constitute cruel and unusual punishment. McDougle v. Maxwell (1964),1 Ohio St.2d 68, 69. Further, a sentence violates the Eighth Amendment only when it is so greatly disproportionate to the offense as to shock the sense of justice of the community. State v. Chaffin (1972),30 Ohio St.2d 13, paragraph three of the syllabus. In the present case, the sentence is not so greatly disproportionate to the offense as to shock the sense of justice to the community. Appellant's attempts to minimize his unlawfulness and violence are unpersuasive. In sum, appellant's continued actions of intimidation, threats, and physical and verbal violence justify the sentences imposed. In addition, appellant does not contest the trial court's analysis in imposing the sentences consecutively. Indeed, the trial court made findings under R.C.2929.14(E)(4) and gave its reasons for selecting consecutive sentences pursuant to R.C. 2929.19(B)(2)(c). Thus, we find the trial court's sentence did not constitute cruel and unusual punishment. Therefore, appellant's third assignment of error is sustained in part and overruled in part.
Appellant argues in his fourth assignment of error that the trial court erred when it considered factors outside the record, thereby denying him due process of law. Appellant claims the prosecutor's prejudicial statement during the sentencing hearing that appellant was a member of the "notorious" X-Clan gang was not otherwise in the record and, therefore, the trial court's sentences were improperly tainted. The prosecutor's actual statement on this issue was: "the Court knows the facts, knows William Small's record, knows he's been in court before as well as the gang ties that Mr. Small is supposed to be affiliated with."
We find appellant's argument unpersuasive. Appellant's counsel objected twice to the court taking into consideration any gang affiliation in its sentencing, and there is no evidence in the record the trial court considered any alleged gang affiliation. The court specifically stated appellant's sentence was based upon the evidence presented, the testimony of the witnesses, and appellant's extensive prior criminal history. We also note that after the trial court allowed appellant to speak at the sentencing hearing, appellant proceeded to speak for what constituted thirty pages in the transcript regarding numerous subjects, including his affiliation with the Crips and his association with Ronald Dawson, the purported leader of the X-Clan. Appellant has failed to demonstrate the trial court considered any improper evidence in sentencing him, and his fourth assignment of error is overruled.
Accordingly, appellant's first, second, and fourth assignments of error are overruled, and his third assignment of error is sustained in part and overruled in part. The judgment of the Franklin County Court of Common Pleas is reversed for a clarification of appellant's sentence and affirmed in all other respects.
 _________________ BROWN, J.
KENNEDY, J., concurs. DESHLER, J., concurs separately.